Leif Thompson
Leif Thompson Law Office
Alaska Bar No. 1006041
306 Main Street Suite 304
Ketchikan, AK 99901
Cell phone (907) 617-9256
Office     (907) 247-9256
Fax        (888) 363-1007
Leifthompson@outlook.com
Attorney for Defendant John Doe

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| **JANE DOE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| **VIGOR ALASKA LLC, and** ) | |
| **JOHN DOE,** ) | Case No. 5:17-CV-0007-SLG |
| ) | |
| Defendants. )**JOHN DOE'S** | |
| )**ANSWER TO AMENDED COMPLAINT** | |

1. This is a legal conclusion that does not call for a factual answer.
2. John Doe admits that the plaintiff was a former employee of Vigor Alaska LLC and is female and Alaska Native. He does not know where she resides.
3. Admit.
4. Admit.
    4-A. John Doe is unaware of the status of Ms. Doe's administrative equal protections cases.
5. Admit.
    5A. Admit.

6. Admit.
7. Admit that Ms. Doe worked at Vigor. John Doe does not know whether she was at all times a competent employee.
8. John Doe does not know Ms. Doe's work history.
9. John Does does not know what rumors were started regarding Ms. Doe.
10. John Doe does not know Ms. Doe's work history with her welding instructors.
11. Denied. John Doe and Ms. Doe entered into a consensual sexual relationship around the late fall 2014 when Ms. Doe was on the laborer's crew and John Doe was on the electrical crew.

It is customary for Vigor employees to eat lunch at A&P Deli across the street from the shipyard. John Doe and Ms. Doe started flirting and playing footsie during lunches during the fall of 2014. There was constant mutual flirting after that point.

Then, Ms. Doe transferred to the electrical crew. The first time a more serious sexual encounter happened, John Doe and Ms. Doe were assigned to different boats and Ms. Doe asked John Doe to meet her in the confined space she was working fire watch in.

They hugged but didn't grope or kiss.

Ms. Doe confided in John about many personal matters. She told John Doe she was worried about financial expenses during the holiday.

John Doe bought Ms. a $50 gift card to A&P Market to help Ms. Doe with her Christmas expenses for Christmas 2014.

During winter 2014, John Doe hugged Ms. Doe in a public space but with no one around before he gave her the gift card.

In February of 2015, John Doe and Ms. Doe would meet each other in confined spaces and would kiss and grope each other on multiple occasions.

John Doe and Ms. Doe would not have sex or remove clothing during these encounters. Ms. Doe refused because John Doe was married, Ketchikan is a small town and Ms. Doe did not want to get caught.

The last one of these encounters was on the ferry boat Leconte. Ms. Doe and John Doe were in a forward compartment, and Ms. Doe decided to end the relationship. She pushed John Doe away, he said "come on" and tried to hug her, then she threatened to scream. John Doe left her alone at that point and never tried to pursue a relationship again.

Except, a few weeks after that, John Doe helped Ms. Doe move her apartment from one place to another. Nothing sexual happened at Doe's house.

A few weeks after that, Ms. Doe lodged a complaint against John Doe with Vigor. He initially denied any contact with Ms. Doe, but that same day confessed everything. He was fired about two weeks later.

12. John Doe and Ms. Doe lived near each other. John Doe did text Ms. Doe when he was jogging, but he never left her candy or went to her house other than the time he helped her move.

John Doe did leave chocolates on Ms. Doe's car in the Vigor parking lot one morning in February 2015.

13. John Doe Does not know the answer to this allegation.

*Doe v. Vigor and Doe,* 5:17-CV-0007-SLG           Page 3 of 8 Pages

Case 5:17-cv-00007-SLG   Document 12   Filed 12/28/17   Page 3 of 8

14. Denied.

15. Denied. John Doe never grabbed Ms. Doe's crotch or became jealous of other workers. Also, Ms. Doe never told John Doe to stop, but she would prevent him from removing her clothing and from having sex with her. That was a boundary Doe set for the affair.

16. Denied. Ms. Doe did not dread working with John Doe. Also, she did not have to learn from John Doe, as there were many workers at Vigor with similar credentials to John Doe. On occasion where John Doe and Ms. Doe groped and kissed each other, the affair was mutual. John Doe admits grabbing Ms. Doe's butt on numerous occasions. John Doe did not advance Ms. Doe's work in any way with this affair.

17. Denied. John Doe has never groped or kissed Doe against her will. He has been in several confined spaces with her due to the nature of their former work. Ms. Doe did not allow John Doe to put his hands down her pants or remove her clothing as that was a boundary she set for the affair.

18. Denied. John Doe never made Ms. Doe cry, or groped her against her will.

19. Ms. Doe never modified her work clothing in any way as a result of the affair. John Doe does not know whether Ms. Doe declined any Saturday working times or not.

20. John Doe often joked with Doe about many matters. He never taunted her.

21. John Doe never aggressively kissed Ms. Doe. The affair was ended by Ms. Doe on Valentines 2015.

22. John Doe does not know whether Ms. Doe suffered anxiety or weight gain as a result of the affair. He does know that Ms. Doe suffers from depression and is a heavy drinker. Ms. Doe confided these things to John Doe during their affair.
23. John Doe does not know the answer to this.
24. John Doe admits that Ms. Doe reported John Doe and that his employment was terminated.
25. John Doe does not know the answer to this.
26. John Doe does not know the answer to this.
27. John Doe does not know the answer to this.
28. John Doe does not know the answer to this.
29. John Doe does not know the answer to this.
30. John Doe does not know the answer to this.
31. John Doe does not know the answer to this.
32. John Doe does not know the answer to this.
33. John Doe admits to being a lead worker. He does not have an answer for Vigor's liability.
34. John Doe does not know the answer to this.
35. John Doe does not know the answer to this.
36. John Doe realleges his answers as given in paragraphs 1-35.

37. Denied. Ms. Doe welcomed her sexual advances, and learning her trade was not conditioned on her affair with John Doe.
38. Denied.
39. Denied.
40. John Doe realleges his answers as given in paragraphs 1-39.
41. John Doe did not terminate Ms. Doe's employment.
43. John Doe has not retaliated against Ms. Doe.
44. John Doe realleges his answers as set out in paragraphs 1-43.
45. Denied.
46. John Doe realleges his answers as given in paragraphs 1-45.
47.
    a. Denied.
    b. Denied.
    c. Denied.
    d. Denied.
48. John Doe realleges his answers as set out in paragraphs 1-47.
49. ABCD. Denied. John Doe never had a contract with Ms. Doe.
50. John Doe realleges his answers as given in paragraphs 1-49.
51. Denied. John Doe did not have a contact with Ms. Doe.
52. John Doe reallages his answers as given in paragraphs 1-51.
53. Deny.
54. John Doe realleges his answers as given in paragraphs 1-53.

55. Denied.  John Doe did not employ or terminate Ms. Doe.
56. John Doe realleges his answer as given in paragraphs 1-55.
57. Denied.  John Doe has never defamed Ms. Doe.
58. Denied.
59. John Doe realleges his answers as given in paragraphs 1-58.
60. Denied.
61. Denied.
62. Denied.
63. John Doe realleges his answers as given in paragraphs 1-62.
64. Denied. John Doe's sexual contact with Ms. Doe was welcomed, solicited, and encouraged by her, and was not harmful or offensive.  Also, John Doe was a lead worker and not a supervisor.  He did not have an affair with Ms. Doe to further Vigor's interests.
65. Denied.  John Doe and Ms. Doe hid their affair so that Vigor would not know about it.

**Affirmative Defenses**

John Doe was not Ms. Doe's employer within the meaning of AS 18.80.300(5) and AS 18.80.220.  He never had a contract of any sort with Ms. Doe and those statutes and common law breach of contract do not apply to him.

Regarding assault and battery, Ms. Doe allowed, consented, welcomed, invited, solicited and encouraged Roe to touch, kiss and grope her throughout their affair.  She fully consented to all sexual contact between them, she set the boundaries for the relationship, and she ended it when she wanted it to end.

Regarding defamation, if John Doe told anybody anything about the affair, his statements were true and based on firsthand knowledge.

### Conclusion

It is respectfully requested that this matter be dismissed with prejudice, and the plaintiff pay John Doe's costs and attorney's fees, along with all other just, equitable and proper relief.

**Respectfully Submitted**,



_____
Leif A. Thompson
Alaska Bar No. 1006041
306 Main Street Suite 304
Ketchikan, AK 99901
Attorney for John Doe

### Certificate of Service

A copy of this entry of appearance was E-mailed to Kathleen Strasbaugh, Esq., and Kevin Cuddy, Esq. on the date of filing.

_____